# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 15-30064

———————

JESSIE J. GRACE, III,

       Petitioner - Appellee

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

       Respondent - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2016

Lyle W. Cayce
Clerk

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Jessie Grace filed a habeas petition in federal court, challenging his state-court conviction for second-degree murder. During the federal habeas proceedings, the district court discovered that Grace potentially had additional habeas claims against the State of Louisiana. Because dismissing Grace's petition to allow him to exhaust those new claims in state court would cause his already-exhausted claims to become time-barred, the district court entered a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), in which the Supreme Court addressed this very dilemma. The State appeals the district court's order granting the stay, but we DISMISS the appeal for lack of appellate jurisdiction.

No. 15-30064

## I.

Grace was convicted in 1994 of second-degree murder. He has been pursuing post-conviction relief ever since. After exhausting several claims in Louisiana state court, he filed a habeas petition in federal court. The district court held an evidentiary hearing, during which the district court reviewed in camera the district attorney's file on Grace. On review of the file, the district court concluded that the grand jury testimony revealed potential habeas claims that were previously unavailable to—and were thus unexhausted by—Grace, who had not previously had access to that testimony. Accordingly, the district court recognized that if Grace were to amend his petition to add his unexhausted claims, it would be a "mixed" petition (containing both exhausted and unexhausted claims). Dismissing his petition while he exhausted his new claims in state court would cause his previously exhausted claims to become time-barred, so the district court stayed his petition sua sponte pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). The State appealed the stay.

Grace moved to dismiss the appeal for lack of jurisdiction. A prior panel of this court granted the motion and dismissed the appeal, holding that the district court's order granting the stay was not an appealable collateral order. In the prior panel's view, the order was not an "important questio[n]," nor would it be "effectively unreviewable on appeal from the final judgment." *Grace v. Cain*, 624 F. App'x 169, 171-72 (5th Cir. 2015) (per curiam) (unpublished), *reh'g granted, opinion withdrawn*, No. 15-30064, 2016 WL 104339 (5th Cir. Jan. 7, 2016) (per curiam). The prior panel also rejected the State's petition for mandamus. *Id.* at 170 n.1.

The State filed a petition for rehearing en banc, and this court requested a response from Grace. On reconsideration, the prior panel treated the petition for rehearing en banc as a petition for panel rehearing, granted that motion, and withdrew its order dismissing the appeal. *Grace*, 2016 WL 104339, at *1.

No. 15-30064

As a result, the case was sent to this panel and the motion to dismiss was carried with the case. *Id.*

## II.

Grace argues that we lack appellate jurisdiction because the district court's stay order is neither an appealable final order nor an appealable collateral order. The State primarily contends that the order is an appealable collateral order. Although courts of appeals generally have jurisdiction only over final orders, a "small class" of collateral orders are "too important to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106, 116 (2009). That "small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* at 106. All three requirements must be satisfied for appellate jurisdiction to exist. *Id.* at 107.

We assume, without deciding, that the question here has been conclusively determined and that it is separate from the merits. But it is not sufficiently important or effectively unreviewable under the collateral-order doctrine. The sole issue presented in this appeal is whether the district court abused its discretion in granting the stay—whether the stay should have been granted is the only question "resolved" by the district court that the State challenges. Thus, the inquiry under the collateral-order doctrine is whether *that* question is an "important questio[n] separate from the merits . . . that [is] effectively unreviewable on appeal from the final judgment." *Mohawk*, 558 U.S. at 107. *Rhines v. Weber*, standing alone, did not affect the importance of that question. The issue is not whether the district court *can* stay a habeas petition—all agree that the district court can do so under *Rhines*—it is whether the district court abused its discretion in doing so here.

3

No. 15-30064

The Supreme Court has explained that, under the collateral-order doctrine, importance and unreviewability are inseparable inquiries. *See Mohawk*, 558 U.S. at 107 (explaining that requirement of "sufficiently strong" justification for immediate appeal "finds expression" in importance and unreviewability conditions). Bare unreviewability does not suffice; "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* (noting that the unreviewability inquiry "simply cannot be answered without a judgment about the value of the interests that would be lost" without immediate appeal); *cf. id.* (rejecting argument that order requiring disclosure of purportedly privileged material was appealable collateral order). So even if a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment," that alone "has never sufficed." *Id.* (internal quotation marks omitted). Indeed, "the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted," is insufficient. *Id.* To sum up, whether a question is unreviewable for purposes of the collateral-order doctrine depends on a value judgment about what is lost unless the party is permitted to immediately appeal.

"Absent a *Moses Cone* situation, stay orders rarely satisfy [the collateral-order] requirements, and therefore, are usually not reviewable as collateral orders." *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993). This case does not present a *Moses Cone* situation, and that fact is also critical to understanding why *Johnson v. State of Texas*, 878 F.2d 904 (5th Cir. 1989)—on which the State heavily relies—is distinguishable.

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, one party to a construction dispute, Mercury, wanted to arbitrate and the other, Moses Cone, did not. 460 U.S. 1, 7-8 (1983). Moses Cone sought a declaratory

4

judgment and an injunction in state court to block arbitration, while Mercury filed an action in federal court to compel arbitration. *Id.* The issue in both the federal and state cases was identical: whether the parties had to arbitrate. *Id.* The federal district court stayed the case pending the state court's resolution of that issue, so Mercury appealed. *Id.*

The Supreme Court held that the district court's stay order was appealable under the collateral-order doctrine. *Id.* at 13. The Court explained that the district court's stay order "would be entirely unreviewable if not appealed now," because "[o]nce the state court decided the issue of arbitrability, the federal court would be bound to honor that determination as res judicata." *Id.* at 12. Put another way, "the res judicata effect of the state proceedings meant that the denial of an immediate appeal would end the federal case. There would be no more merits over which to litigate." *EEOC v. Neches Butane Prods. Co.*, 704 F.2d 144, 151 (5th Cir. 1983) (discussing *Moses Cone*). Not only would the propriety of the stay be unreviewable, but "[t]he immediate prospect of an adverse and final ruling on the merits clearly presented the most extreme example of the kind of important and irreparable loss that would justify an otherwise impermissible interlocutory appeal . . . ." *Id.* at 150; *see Kershaw*, 9 F.3d at 14 n.4 (noting that, as with other abstention doctrines, result of stay order in *Moses Cone* was that "the resolution of the state case necessarily terminate[d] the federal case").[1]

This case does not present a *Moses Cone* situation. Here, the district court stayed proceedings to permit Grace to exhaust his claims in state court before returning to federal court. Unlike in *Moses Cone*, the issues before the federal and state courts are not identical. Resolution of the state case will not

---

[1] Indeed, that is why the Court also held that the order was an appealable final order under section 1291. 460 U.S. at 8-10.

"necessarily terminat[e] the federal case"; the state case does not present "the immediate prospect of an adverse and final ruling on the merits" of Grace's federal habeas petition; and it will not have any res judicata effect. *Kershaw*, 9 F.3d at 14 n.4; *see Neches Butane*, 704 F.2d at 150, 151. And unlike in *Moses Cone*, "the practical effect" of the district court's order is not the same as a dismissal—once Grace exhausts his claims in state court (assuming he does not obtain post-conviction relief), he will return to federal court and the stay will be lifted.[2]  460 U.S. at 13.

Whether the state court or the federal court will have the final say on the merits of Grace's federal habeas petition is simply not at issue, so staying the case to permit the requisite state-court exhaustion does not implicate the same concerns as in *Moses Cone*. While the case is stayed, the state court here is addressing Grace's unexhausted potential claims, which are not even asserted in his federal habeas petition. The state court is *not* addressing the already-exhausted claims in Grace's federal habeas petition—or, put simply, is not addressing the merits of this case. Thus, *Moses Cone* does not apply. *See Neches Butane*, 704 F.2d at 151 (holding that order was not appealable collateral order where petitioner was not presented "with the possibility of an important and irreparable res-judicata-mandated loss on the merits of the principal case"). "Indeed, the only real point of commonality between *Moses Cone* and this case appears to be the common use of the word 'stay.'" *Id.*

The differences between *Moses Cone* and this case also illustrate why *Johnson* is distinguishable. 878 F.2d 904. Johnson sued Texas and other associated defendants under 42 U.S.C. § 1983, and the district court stayed his case "pending his exhaustion of state remedies by way of habeas corpus

---

[2] In fact, Grace would be faced with an effective dismissal if the district court had *not* stayed the case. *See Rhines*, 544 U.S. at 275-76 (explaining dilemma presented by mixed petitions).

proceedings." *Id.* at 905. Johnson appealed, disputing that he was required to exhaust his habeas remedies. *Id.* Defendants moved to dismiss the appeal. Relying on *Moses Cone*, this court denied the motion, holding that the stay order was an appealable collateral order.[3] *Id.* at 905-06. Importantly, the court framed the question on appeal as whether Johnson was in fact required to exhaust his state remedies before pursuing his § 1983 suit. *Id.* at 905 ("The disputed question is whether the claims made in the § 1983 suit are claims which must be first made the subject of habeas corpus proceedings and the exhaustion of state remedies in those proceedings."). Without an interlocutory appeal, Johnson would have to exhaust those remedies and, on appeal from final judgment, the question whether he was truly required to exhaust would be moot. *Id.* As in *Moses Cone*, a legal question bearing on the merits of his case would be irreversibly determined by the state court as a result of the stay. The federal court was thus deferring to the state court on the merits of Johnson's case. *See Dresser v. Ohio Hempery Inc.*, 122 F. App'x 749, 755 (5th Cir. 2004) (per curiam) (unpublished) ("As the district court's stay order is inapposite to the complete abdication of federal jurisdiction that was present in *Moses Cone*, the stay in favor of the federal administrative proceedings here does not fall into that narrow class of cases in which the collateral order doctrine applies.").

But here, all agree that Grace must obtain a ruling from the state court before returning to federal court. The State does not dispute that he must exhaust his newly discovered potential claims before presenting them in federal court; it merely argues that those claims are meritless and thus that

---

[3] Since *Johnson* was decided, this court has sometimes interpreted *Moses Cone* more narrowly than the court did in *Johnson. See, e.g.*, *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1203 (5th Cir. 1991) (explaining that *Moses Cone* "established that a district court's stay that effectively allows a state court to decide the question of arbitrability is an appealable collateral order").

the stay is a waste of time. But the State does not risk losing in federal court if it loses in state court. Johnson, by contrast, did not acknowledge the district court's authority to send his litigation to state court—he disputed that he was required to exhaust his habeas remedies before proceeding. Without an interlocutory appeal, Johnson would have been forced to do something— exhaust his state remedies—that he argued he was not required to do. Here, without an interlocutory appeal, the State is forced only to wait while Grace does something—exhaust his state remedies—that the State agrees Grace must do.

As in *Moses Cone*, the stay in *Johnson* had the practical effect of a dismissal: "[I]t placed Johnson in the same situation as if there had been dismissal without prejudice in that he could not return to federal court with his § 1983 claims until he had exhausted state remedies as ordered by the district court." 878 F.2d at 906. Not so here. If the district court had instead dismissed Grace's petition because of the unexhausted claims, AEDPA's statute of limitations likely would have barred him from returning to federal court. That dilemma is precisely what the Supreme Court sought to cure by permitting district courts to stay mixed petitions.[4]

Both *Moses Cone* and *Johnson* allowed interlocutory appeals because, without one, a state court decision would moot a legal question in the appellant's federal case. Here, the only question mooted in the absence of an appeal is whether the district court abused its discretion by granting the stay, an issue that does not affect the merits of Grace's claims. That is the same question mooted every time a court of appeals refuses to exercise collateral-

---

[4] In fact, Grace could refuse to prosecute the unexhausted claims, leaving only exhausted claims in his petition—vitiating the need for a stay. He thus need not wait for the state court before returning to federal court.

order jurisdiction over a discretionary stay. For all these reasons, *Johnson* does not control.[5]

The only harm to the State caused by a refusal to exercise appellate jurisdiction is that the litigation might be prolonged. True, the State has an interest in "reduc[ing] delays in the execution of state and federal criminal sentences, particularly in capital cases." *Rhines*, 544 U.S. at 276. Yet in *Rhines* itself, the Supreme Court recognized that stays of mixed petitions were "compatible with AEDPA's purposes" in the limited circumstances it outlined. *Id.* In those circumstances, which the district court found to exist here, "the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.* at 278. And a district court, in issuing *Rhines* stays, already takes delay into account because it must find that the petitioner is not employing dilatory tactics. *Id.* Thus, the Supreme Court implicitly de-emphasized the importance of the state's interests in finality and speedy resolution of mixed federal petitions. If those interests do not outweigh a petitioner's interest in obtaining federal review, it is hard to see how they constitute "substantial public interest[s]" or "value[s] of high order" such that they merit interlocutory review. *Mohawk*, 558 U.S. at 107.

After all, the "chance that the litigation at hand might be speeded . . . does not provide a basis for jurisdiction" under the collateral-order doctrine. *Id.* The State's interests here are not appreciably more valuable than

---

[5] Although this case and *Johnson* both involve determinations by the district court that state habeas claims be exhausted for federal litigation to proceed, the interests lost in the absence of an interlocutory appeal differ. Johnson's argument that he was not required to exhaust would be mooted, while here the State agrees that Grace is required to exhaust. The only argument of the State that is mooted without an appeal is whether the district court abused its discretion in granting the stay—not whether the district court *could* grant the stay.

every other litigant's interest in interlocutory review of a garden-variety order staying his case. (Indeed, Grace was sentenced to life in prison; he is not delaying execution of a capital sentence.) As a result, this appeal does not present an "*important* questio[n] separate from the merits" that is not "'adequately vindicable' or 'effectively reviewable'" on appeal from final judgment; the stay order merely "burden[s] [the State] in ways that are only imperfectly reparable by appellate reversal of a final district court judgment."[6] *Id.* That is insufficient. *Id.*; *cf. Matter of Rupp & Bowman Co.*, 109 F.3d 237, 240 (5th Cir. 1997) ("Although . . . delaying review of the abstention decision . . . may cause [the parties] additional litigation-related expenses, we do not view such delays as sufficient to convey jurisdiction under the collateral order doctrine.").

A few additional points merit discussion. In one sense, a decision to stay litigation will never be reviewable on appeal because we would not have the chance to review the appropriateness of the stay—the question would be moot on appeal from final judgment. That, however, is true of *all* stays. *Cf. Neches*

---

[6] *Lewis v. Beddingfield*, 20 F.3d 123 (5th Cir. 1994) (per curiam), on which the State also relies, merits only a brief mention. There, as in *Johnson*, Lewis filed a § 1983 suit and the district court stayed the case pending his state criminal case. *Id.* at 124. On appeal, this court stated that "[f]or purposes of appellate jurisdiction, the district court's decision to stay a suit pending state court proceedings is a final order." *Id. Lewis* is distinguishable for the same reasons as *Johnson*. Although the court in *Lewis* did not rely on *Moses Cone*'s holding that the stay was a final order, that holding cannot be defensibly extended to the circumstances presented here. *See Moses Cone*, 460 U.S. at 8-10 (noting that stay order would put party "effectively out of court" because of the res judicata effect of the state court's decision).

Nor are *Johnson* and *Lewis* in tension. They present alternative holdings. In *Moses Cone*, the Supreme Court held that the district court's stay order was a final order under section 1291 *and* that, even if it were not, it was an appealable collateral order. Similarly, in *Lewis*, the court held that the stay order was a final order; in *Johnson*, the court did not address that question but instead held that it was an appealable collateral order. We thus read *Lewis* and *Johnson* together to represent the same alternative holdings as *Moses Cone*. What is more, whether this appeal is a final order or a collateral order is not dispositive; if it is one or the other we have jurisdiction. This appeal thus does not present the question of whether it is one versus the other.

No. 15-30064

*Butane*, 704 F.2d at 151 (noting that the unreviewability element regarding discovery order "does not differ from the probable unreviewability of virtually any discovery order" and dismissing for lack of jurisdiction). Bare unreviewability, without more, is not sufficient—if it were, *every* stay would be reviewable. *See, e.g.*, *id.* at 148 (collateral-order doctrine "requires some showing of *extraordinary* harm"); *see also* 15A Wright & Miller, Fed. Prac. & Proc. § 3914.13 (2d ed. 2016) (noting that stay decisions are not normally reviewed on interlocutory appeal). The State's interest in speeding this litigation does not sufficiently distinguish the stay here from any other discretionary stay that is unreviewable on interlocutory appeal.

Whether the district court's exercise of discretion must be reviewable on appeal does not speak to whether it must be reviewable on *interlocutory* appeal. Typically, orders reviewable for abuse of discretion are not appealable under the collateral-order doctrine. *See* 15A Wright & Miller, Fed. Prac. & Proc. 3911.5, at 433-34 (2d ed. 2016) ("At times it is pointed out that collateral order appeal is unsuitable with respect to matters of discretion. That is a wise warning . . . ."). Absent interlocutory appeals of *Rhines* stays, moreover, we will still be able to prevent or remedy trial court abuses that undermine AEDPA, such as staying federal habeas claims for plainly unmeritorious state habeas exhaustion or granting excessively long stays. Abusive stay orders may be reviewable pursuant to a mandamus petition, if they involve a clear abuse of discretion and otherwise satisfy the writ's requirements.[7]

---

[7] In *Rhines* itself, the state appealed a stay—with no indication from either the Eighth Circuit or the Supreme Court of a jurisdictional problem—and the Supreme Court vacated and remanded to the Eighth Circuit to determine "whether the District Court's grant of a stay . . . constituted an abuse of discretion." 544 U.S. at 279. But on remand, the Eighth Circuit remanded to the district court to consider the factors outlined by the Supreme Court. The district court re-entered the stay, and the state did not appeal again. The Eighth Circuit thus never addressed the jurisdictional question or reviewed the stay for abuse of discretion. *See Thompson v. Frank*, 599 F.3d 1088, 1090 n.1 (9th Cir. 2010) (per curiam) (explaining that

No. 15-30064

A final note: Since *Rhines* was decided, two of our sister circuits have addressed whether *Rhines* stays are appealable under the collateral-order doctrine, and have answered in the negative. *See Howard v. Norris*, 616 F.3d 799, 803 (8th Cir. 2010) (holding that order granting *Rhines* stay is not appealable collateral order); *Thompson v. Frank*, 599 F.3d 1088, 1090 (9th Cir. 2010) (per curiam) (same). We join the Eighth and Ninth Circuits and hold that orders granting *Rhines* stays are not appealable collateral orders.[8]

## III.

For the reasons described above, we DISMISS this appeal for lack of jurisdiction and DENY the State's alternative petition for mandamus.

---

assumption of jurisdiction in *Rhines* is not binding because jurisdictional question was never addressed, and noting that *Rhines* pre-dated *Mohawk*'s clarification of the collateral-order doctrine).

[8] The State requests in the alternative that the court treat its appeal as a petition for mandamus. We may provide mandamus relief "only [in] exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal citations and quotation marks omitted). But exceptional circumstances do not exist here. The district court did not usurp any power; *Rhines* stays are permissible if justified by the circumstances. And we do not perceive any clear abuse of discretion. We thus deny the State's alternative petition for mandamus.